**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                     **Case No. 8:13-cr-462-T-33TBM**

**ERIC THOMAS,**

      **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

      THIS CAUSE is before the Court on **Defendant's Motion to Suppress Evidence**
(Doc. 14) and government's response in opposition (Doc. 23).  By his motion, the Defendant
seeks to suppress any and all evidence seized from an HP desktop computer which was
subject to a warrantless and nonconsensual search and seizure on July 21, 2012, by officers
with the Largo Police Department.  In opposition, the government contends that both the
Defendant and his wife, who shared access to the computer within the home, consented to the
officers' search.  The government urges that even in the absence of consent to search the HP
computer, suppression is not required because the officers had sufficient probable cause to
support seizure of the computer pending issuance of a federal search warrant for search of the
computer.  An evidentiary hearing on the Motion was conducted on December 20 and 23,
2013.  Additional arguments were taken on February 5, 2014.

A.

A summary of the evidence adduced at the hearing follows.

On July 21, 2012, Officer Matt Steiner, a patrol officer with Largo Police Department (LPD), was dispatched to the Defendant's residence.  He arrived around 11:11 a.m. and spoke with Carolyn Olausen f/k/a Carolyn Thomas (herein, Ms. Olausen),[1] the Defendant's wife.  Ms. Olausen told the officer that her husband had been viewing child pornography on the home computer.  By her account, she had returned home the evening before and found her husband acting nervous.  She did not say that she had seen him at the computer.  The following morning (July 21), she turned on the desktop computer and observed eight to ten child pornography websites with images of prepubescent girls with exposed breast and vaginas, and one showing a child performing oral sex on an adult male. She indicated she had simply turned on the monitor and "restored" the desktop computer and these images appeared on the monitor.  The officer obtained a verbal and written consent to search from Ms. Olausen.[2]  *See* Gov't Exh. 2.  The officer did not speak with Defendant, who was asleep.  Ms. Olausen advised that they shared use of the computers in the home office, although the desktop computer was mainly used by her husband for his work.  Steiner also had Ms. Olausen prepare a written statement.  *See* Gov't Exh. 1.[3]

---

[1]According to the Motion, the Thomases have since divorced and Ms. Thomas now goes by her maiden name.

[2]According to this officer, his request for consent was directed to the HP desktop computer.  The written consent form identifies a Dell Dimension computer, a Toshiba tablet, an HP Pavilion Slimline, and an external hard drive.

[3]The written statement is fairly consistent with the officer's testimony regarding her discovery of images of young girls on the desktop computer.  She also indicated that in some

By Steiner's account, he saw only two websites visible on the HP desktop computer, and both contained images of child erotica.  He did not see any images of child pornography.  Access to the computer did not appear restricted.  The officer, who lacked training in child pornography cases, thereafter deferred to other officers who arrived at the scene.

Nathan Dix, a detective with LPD, was off duty on this date but was summoned to the scene by Sergeant Shaw because of his experience in cyber crimes and child pornography cases.[4]  He arrived at 12:18 p.m.  After a briefing from Shaw, he went into the office area where he took photographs and looked at the desktop computer screen.  Before conducting any search, he spoke with Ms. Olausen and received her verbal consent to search the computers.  The witness observed two active browser pages on the desktop monitor exhibiting child erotica.  He took photographs of the same.  *See* Gov't Exh. 3 and 3A.[5]  He also noticed a Dell computer which was not on.  By his recollection, the HP desktop computer (HP computer) was in sleep mode and he had to use the mouse to restore the active screen.  Access was not otherwise restricted in any way.  He identified the two web pages as "nnlollys.info" and "hdschoolteens.com."  Several links were listed on the "nnlollys.info"

---

pictures, adult men were included, some with clothes on and others with their penises exposed.  In one picture, a young girl between four to six years old was performing oral sex on an adult.  After viewing several websites, she called her brother and then called the police.

[4]Dix stated he was a member of a state and federal task force related to child pornography and experienced in the investigation of a variety of child abuse and child pornography type cases.

[5]The witness stated that the timestamp on the photographs is off by one hour and should reflect 1:11 p.m., not 12:11 p.m.

page, which in his view were indicative of child pornography.[6]  The single photo on "hdschoolteens.com" appeared part of a photo gallery.

According to Dix, Ms. Olausen stated that she arrived home the evening before, observed her husband get up from the area of the computer desk quickly, and act somewhat nervous.  This was unusual.  They went to bed.  When she awoke the next day, she turned on the monitor, "restored" the browser, and observed eight to ten internet windows displaying child pornography.  She described the images as she had to Steiner.  She noted that there were two computers in the home office, the HP desktop and a Dell computer.  There was also a Toshiba tablet in the office, but Ms. Olausen was unsure whether it even worked.[7]  Ms. Olausen told Dix that both she and her husband used the computers, although her husband was the primary user.  She also noted that her husband was very compulsive about properly shutting his computer down, and he used spamware, spam filters, and deleted internet cookies.

According to Dix, Ms. Olausen denied doing anything to manipulate the computer or to close out any items, but the officer did not see any evidence of the eight to ten computer pages she claimed to have observed.  As a consequence, the detective believes she was either mistaken about what she observed or that she had closed out the tabs herself.

---

[6]He identified the links as: xxxpre13tabooo; little7-13yopuss; pre13nunder; preteenhdvideo; and 10/14lollypopsonly.  He did not try to view those cites.

[7]Only the search and seizure of the HP computer appears at issue.  Counsel advise that LPD did not conduct a further search of the Dell and Toshiba after they left the house and there is no evidence that either contained images of child pornography.

Dix, who was not experienced or trained to search "live memory," left the HP computer to be examined by the Florida Department of Law Enforcement (FDLE). Dix removed the hard drive from the Dell and began a forensic scan of video and image files. *See* Gov't Exh. 4. When FDLE agent Corey Monaghan arrived, he used a forensic tool to scan the HP computer. While Monaghan was running his scan, the officers had their first encounter with Defendant. Leaving his bedroom, Defendant approached the door to the home office where he was confronted by LPD Officer Jim Shinn. Prior to this, no one had spoken with Defendant. According to Dix, Defendant had been sleeping and no effort was made to wake him. As Defendant approached, he looked into the office area and at the officers. Shinn kept Defendant from entering the office and told Defendant he would explain what was going on in the livingroom. Monaghan followed them into the livingroom. Dix completed his scan of the Dell and began to work on the Toshiba. When Monaghan reentered the home office, he advised that the Defendant had "revoked" his consent to the search. Monaghan directed the searches stop and that the computers would be seized. In Dix's view, there was probable cause to believe there was child pornography on any of the computers. In his experience, child erotica and child pornography were often found together. Absent seizure, he believed there was a risk evidence would be destroyed.

On cross examination, Dix conceded that the officers acted without a search warrant and they made no effort to secure the home so that a search warrant could be obtained. He also conceded that he did not make any effort to obtain consent from the Defendant when he awoke and approached the office area, and that none of the searches at the scene revealed any evidence of child pornography.

Shinn was dispatched to Defendant's residence at about 1:41 p.m.  His role was to provide security at the scene.  When he entered, he was told Defendant was asleep and he was to alert the officers if Defendant got up.  Shinn waited in the kitchen.  He did not take any part in the search.  Shinn saw Defendant leave his bedroom and approach the home office.  Monaghan approached the Defendant and directed him to the living room.  When the Defendant continued to walk to the office doorway, Shinn prevented his entry and told him he needed to speak with Monaghan in the living room.  When the Defendant and Monaghan proceeded into the living room, the witness returned to the kitchen area.  From there, he overheard Monaghan ask the Defendant for consent to search the computers and the Defendant responded, "yes."  When Monaghan then asked for written consent, the Defendant asked to speak with his wife.  Monaghan suggested he fill out the form and then he would see about Defendant speaking with his wife.[8]  Defendant equivocated, saying he wanted to speak with his wife.  Monaghan told him he needed to make a clear decision about what he wanted to do.  Defendant again asked to speak with his wife before he would sign the form.  Near the end of this brief conversation, Monaghan left to ask Ms. Olausen if she wished to speak with the Defendant.  He returned and told Defendant that she did not want to speak with him.  When Defendant mentioned his sister being an attorney and his desire to speak with her, the discussion ended.  By Monaghan's account, all of this transpired within five minutes.

Monaghan, an FDLE agent active in cyber-crime investigations, was previously a detective with the LPD and federal task force agent.  On July 21, 2012, he arrived at the

---

[8]By Shinn's account, Defendant partially completed the consent form handed to him by Monaghan.  This appears inaccurate.  In his testimony, Monaghan did not recall this and there is no evidence of a partially completed consent form.

Defendant's residence at about 12:55 p.m.  He spoke with Dix, learned that Ms. Olausen had consented to a search of the computers and that Defendant was asleep.  Monaghan then went to the office and began a search of the HP desktop using the osTriage forensic tool.  While he did not find the computer restricted in any way when he arrived, he claimed that he later learned from Ms. Olausen that the computer was password-protected and that she and her husband had the password.[9]  He scrolled through the two websites on the screen and noted eighteen links on the nnlollys.info site with names indicative of child exploitation.  He did not check them further at that time.  None of the images he observed on these websites were child pornography.  At some point, Ms. Olausen came in and spoke with him.

As explained by Monaghan, the osTriage tool is a forensic preview tool for searching live active files and allows the user to scan the computer's registry including internet history, and to scan for images of child pornography or child erotica.  The thumb drive device is inserted directly into a computer and collects information which can later be downloaded onto a CD for further investigation.  According to the log file created in this scan, the osTriage tool was used on the HP computer between 1:01 p.m. and 1:50 p.m.  *See* Gov't Exh. 7.  According to Monaghan, the search was terminated because Defendant withdrew his consent to search.  The internet history obtained through this search reflects activity between 8:38 p.m. on July 20th and 11:08 a.m. on July 21, 2012.  *See* Gov't Exh. 8.

While the computer scans were running, Defendant exited the bedroom and approached the office area.  Monaghan exited the office and went to the living room and asked Defendant if they could talk there.  Monaghan advised Defendant that the wife had

---

[9]Defendant indicated in his Motion that the computer was not password-protected.

7

called and said she found child pornography on the computer.  Defendant denied viewing

child pornography although he admitted he viewed adult pornography.  Defendant was asked

for consent to search the computers and he said "yes."[10]  Monaghan then produced a written

consent-to-search form and asked Defendant to sign it.  Defendant indicated that he wished to

speak with his wife.  Monaghan again asked him to sign the form and Defendant again

indicated that he wished to speak with his wife.  Monaghan went outside and spoke with Ms.

Olausen, who indicated that she did not wish to speak with Defendant and this was conveyed

to Defendant.  According to Monaghan, he needed to clarify whether LPD had obtained

consent to search from the Defendant, and after going back and forth with Defendant about

him speaking with his wife, Monaghan decided that Defendant was revoking his verbal

consent to search.  At some point, Defendant also stated that his sister was an attorney and he

wished to speak with her.  Monaghan then reentered the office area and advised Dix that

Defendant had revoked his consent.  He cancelled the osTriage scan and told Dix to stop his

scan as well.  Monaghan also advised Dix they were taking the computers and all were seized

and taken to LPD.  Despite Defendant revoking his consent to search and seize the computers,

Monaghan directed that the computers be taken.  Given the images he saw, Ms. Olausen's

account, and the internet history results obtained by osTriage, Monaghan believed the

computers contained images of child pornography.  By his account, all the information

gathered by osTriage was obtained before his encounter with Defendant and none revealed an

image of child pornography.

---

[10]Although it is not clear when, at some time during this brief conversation Monaghan
advised Defendant that his wife had consented to the search.

The information collected by the osTriage device was downloaded to a CD shortly thereafter and reviewed multiple times by Monaghan.  Again, he saw no images of child pornography, only websites with names indicative of the same.  When he finally reviewed certain websites in August, he found one with an image of child pornography and several others depicting child erotica.  The last of the internet history also revealed that Ms. Olausen had "googled" the LPD.  He found this contrary to her claim that she had not manipulated the computer in any way.  Ms. Olausen later reported that she had called her brother after her discovery and then called LPD.

Monaghan sought to obtain a state-court authorized search warrant for the HP desktop computer.  After being told by a state prosecutor that there was insufficient probable cause for such a warrant, he conducted additional investigation of some of the sites listed in the internet history and then made application for a federal search warrant, which was granted.  *See* Gov't Exh. 5.[11]  Subsequent to his obtaining the search warrant, a forensic search of the HP computer was conducted.  By Monaghan's account, approximately 60

---

[11]The import of the federal search warrant is not addressed in the Motion.  At arguments, Defendant asserted that information used to obtain the warrant was the fruit of the poisonous tree.  The federal search warrant was obtained on August 24, 2012.  The warrant application reflects Monaghan's belief that 200 of the 739 URLs revealed in the browser history obtained by the osTriage tool had character strings indicative of adult or child pornography.  On August 22, 2012, Monaghan visited 27 of these website URLs.  As represented in the warrant application, two contained multiple images of child and adult pornography, one contained an image of child pornography, four contained images of child erotica, four advertised links indicative of child pornography but contained no images, and three contained images of teenagers.  Thirteen of the website URLs were no longer active on this date.  While testifying, Monaghan conceded that the websites he observed in August 2012 would not necessarily reflect what was present on the website back in July, but in his view, it likely would be similar.

9

images of child pornography were discovered in the live space and over 800 images in the unallocated space.

On cross examination, Monaghan indicated that the internet history reflects that the nnLolys site and the hdschoolteens site were accessed within a matter of seconds of each other on the evening of July 20, 2012. *See* Def. Exh 5. The internet history does not indicate how long the sites remained open. Monaghan agreed that it did not reflect the links listed on nnLollys were accessed. No officer could corroborate with any particularity from their scans Ms. Olausen's statement that she saw eight to ten web pages displayed on the HD desktop computer when she restored it on July 21, 2012.

## B.

Defendant argues that all evidence obtained from the search of the HP computer should be suppressed. Because the initial search of the computer via the osTriage tool and the subsequent seizure of the computer and removal of it from his home were without a warrant or *his* consent and otherwise unsupported by probable cause, the evidence was obtained in contravention of his Fourth Amendment rights. Thus, he argues that the evidence so obtained could not be used to obtain the search warrant, which, in this case, was unsupported by probable cause.

Here, the following principles guide the decision. "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (citing *Illinois v. Rodriguez,* 497 U.S. 177

(1990)*; United States v. Matlock*, 415 U.S. 164 (1974)).  In such circumstances, common

authority rests on the "mutual use of the property by persons generally having joint access or

control for most purposes. . . ." *Matlock,* 415 U.S. at 171-72, n. 7.  However, "a warrantless

search of a shared dwelling for evidence over the express refusal of consent by a physically

present resident cannot be justified as reasonable as to him on the basis of consent given to

the police by another resident." *Randolph*, 547 U.S. at 120.  It is axiomatic that a warrant not

issue in the absence of probable cause.  U.S. Const. Amend IV.  Probable cause is a fluid

concept involving an assessment of the totality of circumstances and an assessment of the

probabilities in particular factual contexts. *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  "The

task of the issuing magistrate is simply to make a practical, common-sense decision whether,

given all the circumstances set forth in the affidavit before him, . . . , there is a fair probability

that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

C.

I find no Fourth Amendment violation in connection with the LPD's warrantless

entry and initial search of the computers as above described.  Such was justified based on the

voluntary verbal and written consent given by Ms. Olausen to both search and seize items

from the home.  On this record, she shared authority and access over the home, the home-

office area, and the computers found therein.  Even if such were not the case, LPD officers

could have reasonably and in good faith concluded that she had such shared authority and

access in the circumstances presented them. *See Illinois,* 497 U.S. at 188-89.  I also conclude

that the search and seizure of data from the HP computer prior to Defendant refusing to sign a

written consent form was done consistent with the Fourth Amendment as well.  On the

11

evidence presented, Defendant verbally consented to the search of the computers when first

asked but shortly thereafter balked at signing a written consent to search form.  By the time

Monaghan concluded that he no longer had Defendant's consent, the HP computer had been

scanned and information had been downloaded for nearly 50 minutes.  Defendant's

revocation of consent does not require the suppression of evidence already lawfully obtained.

*See United States v. Megahed*, No. 8:07-cr-342-T-26MAP, 2009 WL 722481, at *3 (M.D.

Fla. Mar. 18, 2009) (citing *United States v. Ponder*, 444 F.2d 816, 818 (5th Cir. 1971); *Mason*

*v. Pulliam*, 557 F.2d 426, 429 (5th Cir. 1977); *United States v. Ward*, 576 F.2d 243, 244-45

(9th Cir. 1978)).[12]

      Given the conclusion that the initial search of the HP computer was supported by

valid consent, it follows that Monaghan was free to copy the data obtained by use of the

---

[12]Defendant cites *Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001), urging that the information seized by the computer scans conducted before he refused consent, in particular, his browser history on the HP computer, should be suppressed.  Like the co-occupant in *Trulock* whose computer files were password-protected, Defendant contends the circumstances here reflect his efforts to keep his computer usage private even from his wife.  However, while Ms. Olausen reported that the HP computer was used predominantly by Defendant (who was particular about how he used the computer), I find the circumstances more akin to those in *United States v. Buckner*, 473 F.3d 551 (4th Cir. 2007), also cited by Defendant.  There, the court upheld the search of a jointly used computer based on the wife's consent to the search of password-protected files of her husband.  As in that case, the totality of circumstances known to the LPD officers would suggest to a reasonable officer that the wife had shared authority over the area searched including the jointly used HP computer.  Defendant claims that his files were not password-protected and he makes no showing that he carved out any zone of privacy concerning the use and access to this computer.  According to the testimony, the wife demonstrated ready access and did nothing more than "restore" the previous night's internet activity.  The officers found no restrictions either.  While the computer was used more by the Defendant for his work and the officers were advised that Defendant was compulsive about his computer usage, the totality of circumstances revealed no objective indication that suggested Ms. Olausen had only limited access or Defendant had created a special zone of privacy in his computer files or his browser history which might bar the officers from searching the same based on the wife's consent.

osTriage onto a CD for further review without the necessity of obtaining a warrant to

authorize such.  As urged by the government, a valid consent to search carries with it the right

to examine and photocopy.  *See Ponder*, 444 F.2d at 818 (citations omitted).  Thus, I find no

Fourth Amendment violation in Monaghan's subsequent review of the internet history or in

his follow-up investigation examining certain of the suspicious URLs revealed by that history.

Stated otherwise, neither the information obtained by the osTriage device nor the information

developed from review of that information was the fruit of the poisonous tree.  Monaghan was

free to use that information in support of his probable cause application submitted to the

magistrate judge.

      The seizure of the HP computer and its removal from the home is slightly more

problematic.  Ultimately, however, even if it were improper, a finding I do not make here, the

seizure itself is of little consequence given that the computer was not searched again until

after a search warrant was obtained.

      As here established, the LPD officers did not have a warrant or Defendant's consent

to remove the computers from his residence.  By Defendant's argument, they did not have

probable cause to believe that images of child pornography would be found on any of the

computers.  Nor were there exigent circumstances warranting the removal of the computers

from the home where, as here, they could have secured the computers at the residence and

sought a search warrant.  Thus, Defendant contends that LPD was without any lawful basis to

seize the computers.  On the other hand, the government justifies the seizure by urging that

the officers had probable cause to believe there were images of child pornography on the

computers and seizure was necessary to avoid the destruction of evidence that likely would have occurred had they been left at the scene.

I find that the totality of information and circumstances known to Monaghan at the time he seized the HP computer was sufficient to lead a reasonable officer to conclude that evidence of child pornography would likely be found on the HP computer.[13]  Based on the wife's report that she saw images on the HP's monitor that would constitute child pornography, the visual observations by law enforcement of images of child erotica on the HP's monitor, the links listed on those pages which were suggestive of child erotica and/or pornography, the internet history displayed by use of the osTriage device which also suggested that child erotica and/or child pornography sites had been visited during the evening of July 20th, Defendant's admission that he viewed adult pornography, if not child pornography, and given his experience in such investigations, Monaghan had reasonable grounds to believe the HP computer would contain images of child pornography.[14]  *See United States v. Vallimont,* 378 Fed. App'x 972, 974 (11th Cir. 2010) (unpublished).

---

[13]I do not see sufficient facts to support a probable cause finding related to the other two computers.

[14]I agree with defense counsel that there was reason for the officers to question the full story given by Ms. Olausen.  There was evidence, contrary to what she reported, that she had manipulated the computer before the officers arrived.  Moreover, the officers did not see the tabs the wife claimed she saw when she restored the computer that morning, nor did the scan of the HP computer show evidence of those multiple tabs claimed by the wife.  I also agree that the presence of child erotica on the computer was insufficient, in and of itself, to support a probable cause finding that the computer contained child pornography.  Nonetheless, based on all the facts and circumstances presented him, a reasonable officer could conclude that there was probable cause to believe that images of child pornography would be located on the HP computer.

14

Similarly, I conclude that the circumstances presented also support that Monaghan's belief that evidence would be lost or destroyed should they leave the HP computer at the scene while a search warrant was pursued was also reasonable.  Recognized situations in which exigent circumstances exist include the risk of loss, destruction, removal or concealment of evidence.  *United States v. Santa*, 236 F.3d 662, 669 (11th Cir. 2000) (citing *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983)).  "The test of whether exigent circumstances exist is an objective one.  '[T]he appropriate inquiry is whether the facts . . . would lead a reasonable, experienced [officer] to believe that the evidence might be destroyed before a warrant could be secured.'"  *Santa*, 236 F.3d at 669 (quotation and citation omitted).  Here, given the portable nature of the computer and its contents, and recognizing that Defendant was fully aware of the police presence and the nature of their investigation, I find it reasonable that the officers were concerned with the possible loss or destruction of evidence and justified in the seizure of the HP computer and its removal to the LPD for safe-keeping pending their obtaining a warrant.

Finally, I find no merit in Defendant's contention that the search warrant authorizing the search of the HP computer was unsupported by probable cause.  By any fair reading, the facts set forth in the affidavit in support of the warrant are more than adequate to support the conclusion that images of child pornography would be found upon a search of the HP computer.

D.

Accordingly, for the foregoing reasons, I RECOMMEND that the **Defendant's**

**Motion to Suppress Evidence** (Doc. 14) be **DENIED**.

Respectfully submitted on this 14th day
of February 2014.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations
contained in this report within fourteen days from the date of its service may constitute a
waiver of the issues raised herein and shall bar an aggrieved party from attacking the factual
findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1);
M.D. Fla. R. 6.02.

Copies furnished to:
Honorable Virginia Hernandez Covington, U.S. District Judge
Counsel of Record